IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCE, INC. *dba* LICE CLINICS OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>THE MIH GROUP, LLC,<br><br>　　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), 12(b)(2), and 12(b)(6)<br><br>Case No. 2:24-cv-414<br><br>Judge Ted Stewart |

This matter comes before the Court on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6)[1] filed by Defendant, The MIH Group, LLC ("MIH"). For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

Larada Sciences, Inc. d/b/a Lice Clinics of America ("LCA") is a corporation organized under the laws of Delaware, with its principal place of business and corporate headquarters in Murray, Utah.[2] LCA manufactures and markets devices, products, and services for the treatment of head lice.[3] In its franchise agreements, LCA grants franchisees the right to use its devices, products, and services to operate independent head-lice treatment clinics.[4] Defendant, a Michigan-based limited liability company, operates seven or eight of approximately 125

---

[1] Docket No. 9.

[2] Docket No. 2 ¶¶ 2, 4.

[3] *Id.* ¶ 6.

[4] *Id.*

franchisee-owned lice treatment clinics franchised by LCA.[5] MIH's principal place of business is Ann Arbor, Michigan, and all its members, as well as its registered agent, reside in Michigan.[6]

The parties entered into a series of agreements beginning in July 2014. The parties first entered into license or "Franchise Agreements" in which MIH became a licensed franchisor of LCA. MIH operated LCA-branded lice treatment clinics located in Michigan, Ohio, and Florida. In December 2015, MIH entered into a Consulting Agreement with LCA.[7] While the Consulting Agreement terminated on February 28, 2018, the Franchise Agreements remained in effect until September 29, 2022, when the parties executed Modification Agreements extending the Franchise Agreements to end September 1, 2023.[8] Shortly after the modified Franchise Agreements expired, LCA representative, Claire Roberts discussed the Franchise Agreements' renewal with MIH representatives Mike Brehm and Phil Brechting; however, no new franchise agreements were executed.[9] Instead, MIH continued operating, at LCA's discretion, on a month-to-month basis during the Interim Period per original Franchise Agreement.[10]

On January 9, 2024, while still operating as LCA's franchisee on a month-to-month basis, MIH informed LCA of its intention to terminate six of its franchise agreements within 48 hours and to compete with LCA by continuing to operate its Michigan and Ohio lice treatment clinics after the franchise relationship ended.[11] LCA previously filed a lawsuit against MIH in Utah

---

[5] *Id.* ¶¶ 3, 9, 18.
[6] *Id.* ¶¶ 9–10.
[7] *Id.* ¶¶ 19, 24.
[8] *Id.* ¶¶19, 26–28.
[9] *Id.* ¶¶ 29–31.
[10] *Id.* ¶¶ 31, 34(aa).
[11] *Id.* ¶ 46.

2

state court. It alleged breach of contract, breach of the covenant of good faith and fair dealing, unlawful and unfair business practices, and unjust enrichment claims.[12] It further sought a permanent injunction, as it does in the present case. LCA voluntarily dismissed the state matter without prejudice and the case was closed in June 2024. Subsequently, LCA filed the present case.

LCA alleges that the Agreements prohibit MIH from competing with LCA's business or disseminating LCA's proprietary information, trade secrets, or goodwill following termination or expiration of the agreements.[13] LCA seeks a declaratory judgement affirming that the Agreements are valid and enforceable, and that MIH may not compete with LCA or disseminate its proprietary information, trades secrets, or goodwill.[14] Additionally, LCA requests a permanent injunction enjoining MIH from using any of LCA's valuable training, proprietary information, trade secrets, or goodwill for two years.[15] LCA seeks an order for specific performance requiring MIH to comply with the Agreements and refrain from competing with LCA.[16]

At issue in the Motion are the forum selection clauses in the Franchise Agreements and the Consulting Agreement. The Franchise Agreements clause states that:

> This Agreement shall be interpreted in accordance with the laws of the state of Utah without consideration of any conflict of laws. Jurisdiction and venue shall be proper in a court of competent jurisdiction in Salt Lake County, Utah. Licensee specifically

---

[12] *Larada Sciences Inc. v. The MIH Group*, No. 240902450.

[13] Docket No. 2 ¶¶ 54–55.

[14] *Id.* ¶¶ 61–62.

[15] *Id.* ¶¶ 73–74.

[16] *Id.* ¶ 78.

covenants and agrees that the choice of law, venue, and jurisdiction are fair and reasonable.[17]

The Consulting Agreement also contains a similar forum and governing law clause that reads as follows:

> The laws of the United States of America and the State of Utah govern all matters arising out of or relating to this Agreement without giving effect to any conflict of law principles. The Company and Consultant each irrevocably consent to the exclusive personal jurisdiction of the federal and state courts located in Utah, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of the federal or state courts located in Utah, personal jurisdiction will be nonexclusive. Additionally, notwithstanding anything in the foregoing to the contrary, a claim for equitable relief arising out of or related to this Agreement may be brought in any court of competent jurisdiction.[18]

Defendant asserts (1) that the forum selection clauses in the Agreements are unenforceable under Michigan law and the Court should either dismiss the case or transfer it to the district court for the Eastern District of Michigan under 28 U.S.C. § 1404(a), (2) if the Court does not enforce the forum selection clause it should decline to exercise personal jurisdiction, and (3) the Court should exercise its discretion to decline the case under the Declaratory Judgment Act.

The Court will address each of Defendant's arguments in turn below.

## II. DISCUSSION

### A. Forum Selection Clause

Defendant seeks to transfer or dismiss this matter arguing that the forum selection clauses are unenforceable and as such the Court should apply the 28 U.S.C. § 1404(a) factors to transfer the case to the Eastern District of Michigan.

---

[17] Docket No. 14, at 15.

[18] *Id.* at 28.

Defendant argues that the Court should apply Michigan law to find the forum selection clauses unenforceable and then apply § 1404(a) factors to transfer the case to Michigan because it is the more convenient forum.

In *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court stated that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."[19] Defendant cites to *Bremen* to assert that since Michigan has a public policy that "renders 'void and unenforceable' a franchise provision 'requiring the arbitration or litigation be conducted outside the state'"[20] the Court should find the forum selection provisions unenforceable. This misapplies *Bremen*, as Utah is the forum in which this matter was brought, not Michigan. Unlike Michigan, Utah does not have a public policy against franchise agreements and Defendant does not point to any Utah policy that enforcement of the forum selection clauses would contravene.

To determine whether the forum selection clause is enforceable, the Court applies Utah law pursuant to the choice of law clause in the agreements.[21] Utah law requires that an "agreement as to the place of an action to be given effect unless it is unfair or unreasonable."[22] Further, "[c]ourts have . . . imposed a high standard for negating a forum selection clause on the basis that it is inconvenient."[23] "Only a showing of inconvenience so serious as to foreclose a

---

[19] 407 U.S. 1, 15 (1972).

[20] Docket No. 9, at 8 (quoting Mich. Comp. Laws. Ann. § 445.1527(f)).

[21] The result would be the same if the Court applied federal law.

[22] *Rocky Mountain Builders Supply Inc. v. Marks*, 2017 UT App 41, ¶ 5, 392 P.3d 981 (quoting Rest. (Second) Conflict of Laws § 80 (Am Law. Inst. Supp. 1988)).

[23] *Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC*, 333 F. Supp. 3d 1179, 1212 (D.N.M. July 2, 2018).

remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause."[24] "Absent [such a showing], there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain."[25]

Here, Defendant asserts that "the Court should find that Utah is an inconvenient forum based upon Michigan's strong public policy [against forum selection clauses]."[26] This does not meet the high inconvenience standard to negate a forum selection clause. Defendant does not allege any other facts showing that the forum selection clauses are otherwise unfair or unreasonable. Accordingly, the forum selection clauses are enforceable.

Defendant seeks transfer pursuant to 28 U.S.C. § 1404(a), under which a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice."[27] In considering a motion to transfer under § 1404(a), a district court considers the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and []

---

[24] *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992); *see Bremen*, 407 U.S. at 18 ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."); *Nieme v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014).

[25] *Bremen*, 407 U.S. at 18.

[26] Docket No. 9, at 8.

[27] 28 U.S.C. § 1404(a).

all other considerations of a practical nature that make a trial easy, expeditious and economical.[28]

The party moving to transfer the case, here, Defendant, bears the burden to establish that the existing forum is inconvenient.[29]

In *Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*,[30] the Supreme Court instructed on how to apply these factors when a valid forum selection clause exists. Although the posture of *Atlantic Marine* differs from this case, namely that the plaintiff filed in a forum other than the one agreed to in the forum selection clause and the defendant was seeking transfer to the contracted-for forum, the Court's language in favor of honoring forum selection clauses is instructive. Specifically, the Court emphasized that "because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."[31] "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."[32] "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."[33]

---

[28] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks and citation omitted).

[29] *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010); *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

[30] 571 U.S. 49 (2013).

[31] *Id.* at 63 (internal quotation marks and citation omitted).

[32] *Id.* at 66.

[33] *Id.*

Turning to the first factor, the "initial choice" of venue in the forum selection clause is the only choice that deserves deference.[34] Therefore, this factor does not weigh in favor of transfer. Second, the Supreme Court has cautioned that a court should not consider arguments about the parties' private interests when there is a valid forum selection clause. "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."[35] Here, Utah was the preselected forum and therefore, this factor weighs against transfer. Turning to the public interest factors, "the practical result is that forum-selection clauses should control except in unusual cases."[36] Defendant does not make any allegations that this case presents unusual circumstances that would outweigh the controlling weight ordinarily given to a valid forum selection clause. Therefore, the Court finds that the factors do not weigh in favor of transfer to the Eastern District of Michigan and accordingly, will deny the Motion to Transfer.

B. Rule 12(b)(2)

Defendant asserts that if the Court invalidates the forum selection clause, the case should be dismissed for lack of personal jurisdiction. Because the forum selection clause is enforceable as discussed above, the Court need not address this argument.[37]

Having determined that the forum selection clause is enforceable, under Utah law, "jurisdiction may be properly exercised as long as there is a rational nexus between the litigation

---

[34] *Id.* at 63.

[35] *Id.* at 64.

[36] *Id.*

[37] *Colt Builders Corp. v. Maille*, No. 2:18cv861, 2019 WL 720707, at *2 (D. Utah Feb. 20, 2019) ("[W]hen parties consent to personal jurisdiction in a certain forum, there is no need to analyze the forum state's long-arm statute or the party's contacts with the forum state.") (citations omitted); *Jacobsen Constr. Co., Inc. v. Teton Builders*, 2005 UT 4, ¶ 7, 106 P.3d 719 (holding that when an enforceable forum clause exists, the minimum contacts standard does not apply).

and the State of Utah."[38] In this case, Plaintiff's principal place of business is in Utah. Accordingly, there is a rational nexus between the litigation and the State and therefore it is proper to exercise personal jurisdiction over the Defendant pursuant to the forum selection clause.

### C. Declaratory Judgment Act

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) arguing that because the suit seeks declaratory relief, the Court has discretion in determining whether to consider the action and should use its discretion to dismiss.[39]

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[40] The Supreme Court has provided that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[41] "Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment."[42]

To determine whether to exercise discretion, courts consider the following factors:

---

[38] *Jacobsen Constr.*, 2005 UT 4, ¶ 7.

[39] Docket No. 9, at 24–25.

[40] 28 U.S.C. § 2201(a).

[41] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

[42] *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Assoc., Inc.*, 685 F.3d 977, 980 (10th Cir. 2012) (citations omitted).

9

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.[43]

The briefs are not helpful in regard to these factors. Defendant addresses the factors summarily in a footnote.[44] This alone is enough for the Court to deny Defendant's request for dismissal. Additionally, Plaintiff asserts without basis that these factors only apply when there is a parallel state action unlike in this case.[45] While many of the cases in which a plaintiff is seeking declaratory judgment involve parallel state actions, these factors have been applied by courts when there are no parallel court actions pending.[46]

Because "the parties have not alleged there is a parallel proceeding or requested an alternative remedy . . . factors one and two are most relevant [in] this case."[47] "It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'"[48]

---

[43] *Id.* (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 2012)).

[44] Docket No. 9, at 24 n.14.

[45] Docket No. 10, at 24.

[46] *See Flint v. Armstrong*, No. 1:22-cv-00123-RJS-DBP, 2023 WL 4409216, at *11 (D. Utah July 7, 2023) (declining to exercise jurisdiction over a declaratory judgment claim because granting the claim would not settle the controversy nor be useful to clarifying legal relations and therefore, "would not be an efficient use of judicial resources."); *Beus Gilbert PLLC v. Brigham Young Univ.*, No. 2:12-CV-970-TS-CMR, 2021 WL 4553244, at *2–5 (D. Utah Oct. 5, 2021) (applying the *Mhoon* factors without a parallel state court action).

[47] *Flint*, 2023 WL 4409216, at *11.

[48] *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

Plaintiff seeks declaratory judgment that (1) "the Franchise Agreements, the Consulting Agreement, and the Modification Agreement's provisions relating to competing with LCA's business and disseminating LCA's Proprietary Information, trade secrets, and goodwill . . . are valid and enforceable;" and (2) "that MIH may not compete with or disseminate LCA's Proprietary Information, trade secrets, and goodwill."[49]

As to the first factor, whether resolution in this case would settle the controversy, it is foreseeable that if the Court granted declaratory judgment, Plaintiff would file breach of contract and other related claims, as such this factor weighs in favor of declining jurisdiction. Turning to the second factor, whether a contract is enforceable may add clarity to the parties' relationship in that if there are valid, enforceable contracts, their relationship is defined via the terms of those contracts. Accordingly, this factor weighs in favor of exercising jurisdiction.

As to the remaining factors, there is nothing before the Court suggesting that Plaintiff is engaged in "procedural fencing" nor is there anything suggesting a declaration from this Court would interfere with or affect any other present proceeding. In considering the relevant factors, the Court finds that they weigh in favor of exercising jurisdiction over the claims and the Court will deny the Motion and exercise jurisdiction over the case.

---

[49] Docket No. 2, at 19.

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 9) is DENIED.

DATED  May 14, 2025.

BY THE COURT:

_____
TED STEWART
United States District Judge