IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC. d/b/a LICE CLINICS OF AMERICA,<br><br>　　　　　　Plaintiff,<br>v.<br><br>THE MIH GROUP, LLC,<br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Case No. 2:24-cv-00414-TS<br><br>Judge Ted Stewart |

　　　　This matter comes before the Court on Plaintiff Larada Sciences, Inc. d/b/a Lice Clinics of America's Motion for Preliminary Injunction.[1] For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

　　　　Plaintiff Larada Sciences, Inc. d/b/a Lice Clinics of America ("LCA") is a corporation that manufactures and markets devices, products, and services for the treatment of head lice and grants franchises to independent lice treatment clinics to use its devices, products, and services.[2] Defendant, the MIH Group, LLC ("MIH") operates lice treatment clinics. In July 2014, Plaintiff and Defendant entered into a series of franchise agreements.[3] Defendant became a licensed franchisor of LCA and operated LCA-branded lice treatment clinics located in Michigan, Ohio, and Florida.[4] At issue here are the Michigan and Ohio locations. In December 2015, Defendant

---

[1] Docket No. 23.

[2] Docket No. 2 ¶ 6.

[3] *Id.* ¶ 19.

[4] *Id.* ¶ 20.

entered into a Consulting Agreement with Plaintiff, which terminated on February 28, 2018.[5] The Franchise Agreements remained in effect until September 29, 2022, when the parties executed a Modification Agreement extending the Franchise Agreements through September 1, 2023.[6] Shortly after the Franchise Agreements expired, an LCA representative discussed renewal of the agreements with MIH representatives, however no new agreements were executed.[7] Instead, Defendant continued operating, at Plaintiff's discretion, on a month-to-month basis during an "Interim Period" per the original Franchise Agreements.[8] On January 9, 2024, Defendant informed Plaintiff of its intention to terminate six of its franchise agreements within 48 hours and that Defendant would continue to operate its lice clinics as "Rapunzel's Lice Boutiques" and cease co-branding with LCA.[9]

The Franchise Agreements contain provisions prohibiting the disclosure of proprietary information.[10] The Consulting Agreement also contains provisions prohibiting the disclosure of proprietary information, competition, and solicitation.[11] The Modification Agreement includes certain non-compete covenants:

> You agree that you will receive valuable training, Proprietary Information and goodwill that you otherwise would not receive or have access to but for the rights licensed to you under [the Franchise Agreement]. You therefore agree to the following non-competition covenants:
>
> . . .

---

[5] *Id.* ¶¶ 24–26.
[6] *Id.* ¶¶ 27–28.
[7] *Id.* ¶¶ 29–30, 32.
[8] *Id.* ¶ 31.
[9] *Id.* ¶¶ 46–49.
[10] *Id.* ¶ 22.
[11] *Id.* ¶ 25.

> (b) You covenant that during the Term or during any Interim Period you will not . . . either directly or indirectly . . . own, manage, operate, maintain, engage in, consult with or have any interest in any other lice-treatment clinic or business other than the one authorized by this Agreement . . . .
>
> (c) You covenant that you will not, for a period of two (2) years after the expiration or termination of the [Franchise Agreement], or after the expiration of any Interim Period . . . either directly or indirectly . . . own, manage, operate, maintain, engage in, consult with or have any interest in a Competing Business:
>
> (i) At the premises of the former Clinic . . . .[12]

Plaintiff filed its Complaint in this matter in June 2024. The Complaint alleges that Defendant breached the non-compete covenants and other covenants by disseminating Plaintiff's proprietary information, trade secrets, and goodwill, and by continuing to operate lice clinics at the same locations. Plaintiff asserts claims for declaratory relief and seeks a permanent injunction under the Declaratory Judgment Act.[13]

On August 20, 2025, Plaintiff filed this Motion for Preliminary Injunction. Defendant filed its Response after a number of stipulated extensions on October 13, 2025. Plaintiff did not file a Reply and the time for doing so has now passed.[14] Having fully reviewed the parties' briefing and finding that oral argument would not be materially helpful,[15] the Court now rules on the Motion for Preliminary Injunction.

## II. DISCUSSION

To obtain a preliminary injunction or a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedures, the movant has the burden of demonstrating: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the

---

[12] *Id.* ¶ 36.

[13] *See* 28 U.S.C. §§ 2201 *et seq.*

[14] DUCivR 7-1(a)(4)(C).

[15] *Id.* 7-1(g).

injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[16] "[A] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[17] Accordingly, "the right to relief must be clear and unequivocal."[18]

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit has identified "three types of specifically disfavored preliminary injunctions (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[19]

Plaintiff seeks a preliminary injunction prohibiting Defendant from "(1) using any of [Plaintiff's] valuable training, proprietary information, trade secrets, and goodwill; and (2) from competing against [Plaintiff] during the pendency of this lawsuit."[20]

In its Complaint, Plaintiff seeks (1) a declaration that the Franchise Agreements, the Consulting Agreement, and the Modification Agreements' provisions relating to competition and dissemination of proprietary information, trade secrets, and goodwill are valid and enforceable, and (2) a declaration that Defendant may not compete with or disseminate Plaintiff's proprietary

---

[16] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1255 (10th Cir. 2003)).

[17] *Id.* (quoting *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984)).

[18] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1256).

[19] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005) (internal quotation marks and citations omitted).

[20] Docket No. 23, at 28.

information, trade secrets, and good will.[21] Plaintiff also seeks a decree of specific performance requiring Defendant to comply with the non-compete covenants.[22]

"[P]reliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits" are "specifically disfavored" and "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in normal course."[23] The requested preliminary injunction seeks essentially all the relief Plaintiff seeks in its Complaint. Accordingly, the Court will more closely scrutinize the Motion.

A. Irreparable Harm

To be entitled to a preliminary injunction, Plaintiff must establish irreparable harm absent the issuance of an injunction. "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[24] The "irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages."[25] This is "not an easy burden to fulfill."[26] "Purely

---

[21] Docket No. 2, at 21–22.

[22] *Id.* at 22.

[23] *Schrier*, 427 F.3d at 1259 (internal quotation marks and citations omitted).

[24] *Dominion Video Satellite, Inc. v. Echostart Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citation omitted).

[25] *Greater Yellowstone Coal.*, 321 F.3d at 1258 (internal quotation marks and citation omitted).

[26] *Id.* (citation omitted).

speculative harm will not suffice."[27] "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[28]

Plaintiff conclusively asserts that it is exposed to ongoing and future treats of irreparable harm because Defendant's continued operation "is likely to send negative messages about LCA to the markets and other franchisees, signal to other franchisees that they can immediately start competing with LCA if they are unhappy without consequence; and risk unfair competition from MIH to LCA's other franchises."[29] Plaintiff does not provide evidence supporting these conclusions.

Plaintiff also asserts that "[b]ecause MIH was provided access to LCA's valuable training, Proprietary Information, trade secrets, and goodwill during its relationship with LCA, its continued use of such information is causing and will continue to cause LCA irreparable harm."[30] Again, Plaintiff fails put forth any evidence that Defendant is using this information.

Furthermore, delay in filing a motion for injunctive relief suggests a lack of immediacy and irreparable harm.[31] While a delay in filing does not automatically bar the issuance of a preliminary injunction, "a delay can justify the denial of a preliminary injunction."[32] "The key question is 'whether the delay was reasonable' or instead 'a decision by the party to sit on its rights.'"[33]

---

[27] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[28] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted).

[29] Docket No. 23, at 21.

[30] *Id.* at 24.

[31] *GTE Corp*, 731 F.3d at 678.

[32] *Colo. Motor Carriers Assoc. v. Town of Vail*, 153 F.4th 1052, 1066 (10th Cir. 2025) (citation omitted).

[33] *Id.* (quoting *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016)).

Plaintiff alleges that on or about January 9, 2024, Defendant notified Plaintiff that it would terminate six of its eight Franchise Agreements within 48 hours and would compete with Plaintiff in Michigan and Ohio.[34]

Plaintiff does not provide any explanation for its delay in seeking a preliminary injunction for nearly one year after it filed the present case or for nearly twenty months after it first had knowledge of the alleged breaches. Furthermore, Plaintiff does not assert any new conduct as a basis for its Motion.

Plaintiff relies on *Bad Ass Coffee Co. v. JH Nterprises LLC*,[35] in which a court in this district granted a preliminary injunction based on an alleged breach by a franchisee of a non-compete agreement. In that case, "[o]nce [the plaintiff] was made aware of [the defendant's new operation], it moved for a preliminary injunction to enjoin [the defendant's] operation under the terms of the franchise agreement's non-compete."[36] Based on Plaintiff's prolonged delay in seeking a preliminary injunction, the present case is distinguishable and as such, the Court does not find Plaintiff's arguments persuasive.

Furthermore, Plaintiff failed to reply or otherwise provide an update to the Court regarding the alleged irreparable harm. Accordingly, the Court has no way of knowing whether Plaintiff is still likely to suffer the alleged irreparable harm absent an injunction.[37] Based on the foregoing, the Court finds that Plaintiff failed to demonstrate irreparable harm.

---

[34] Docket No. 23.

[35] 636 F. Supp. 2d 1237 (D. Utah 2009).

[36] Docket No. 23, at 19 (citing *Bad Ass Coffee Co.*, 636 F. Supp. 2d at 1243).

[37] *Gong v. P'ships & Unincorporated Assocs.*, No. 24 CV 2985, 2024 WL 5679176, at *3 (N.D. Ill. Nov. 26, 2024) ("Given the passage of time since the motion was filed, the Court has no way of knowing whether plaintiff is still likely to suffer irreparable harm in the absence of preliminary relief.").

B. Likelihood of Success

Plaintiff argues that there is a substantial likelihood of success it will prevail on the merits because the non-compete provision is valid and enforceable and Defendant breached the agreement. Plaintiff seeks declaratory judgment that the Agreements' provisions relating to competing with Plaintiff's business and disseminating Plaintiff's Proprietary Information, trade secrets, and goodwill, are valid and enforceable and that Defendant may not compete with or disseminate Plaintiff's Proprietary Information, trade secrets, and goodwill.[38] Defendant disputes the enforceability of the non-compete agreements and contends that Plaintiff failed to perform under the terms of the Modification Agreement.[39]

Based upon these arguments and review of the record, the Court does not find that Plaintiff's right to relief is "clear and unequivocal" at this juncture. However, even if the Court did find a substantial likelihood of success on the merits, "[w]ithout showing irreparable harm [Plaintiff] cannot obtain a preliminary injunction."[40] This factor therefore weights against preliminary injunction.

C. Balance of Hardships

The Court must balance the hardships to the defendant with the plaintiff's purported injury to determine whether to issue an injunction.[41] Defendant asserts that under the proposed injunction, its business would disappear and it would have to close all of its lice clinics, while the

---

[38] Docket No. 2 ¶¶ 61–62.

[39] Docket No. 36, at 18–22.

[40] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury, would standing alone, make preliminary injunctive relief improper.")).

[41] *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

only harm Plaintiff will suffer is the potential loss of franchise fees.[42] Plaintiff asserts that the irreparable harm to its business outweighs any risk of "self-inflicted" damage the injunction may cause to Defendant.[43] Because Plaintiff's harm is speculative and unsupported, the Court finds that the balance weighs against preliminary injunction.

D. Public Interest

The Court finds that it is not in the public interest to issue injunctive relief when doing so would interfere with a competitive marketplace.[44] Further, it is not in the public's interest to grant injunctive relief where the other factors weigh significantly against it.

Based on the foregoing, the Court finds that Plaintiff failed to meet the high burden that the right to relief is clear and unequivocal. Therefore, the Court will deny the Motion.

---

[42] Docket No. 36, at 24.

[43] Docket No. 23, at 25.

[44] *Utah Med. Prod., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1312 (D. Utah 1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000); *Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*, 429 F. Supp. 2d 1248, 1259 (D. Utah 2005) (explaining that the public interest is "best served by competition and the availability of lower priced alternative products"); *Am. Phytotherapy Rsch. Lab'y, Inc. v. Impact Nutrition, Inc.*, 201 F. Supp. 2d 1145, 1151 (D. Utah 2002) ("Public interest favors competition in its various forms.").

## III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 23) is DENIED.

DATED February 18, 2026.

BY THE COURT:

_____
TED STEWART
United States District Judge